UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| E. SCOTT FRISON, JR. and LISA ANN FRISON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) CASE NO. 03-1303 |
| EQUIFAX INFORMATION SERVICES LLC, | ) |
| EXPERIAN INFORMATION SERVICES, LLC, | ) |
| and TRANS UNION, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## EQUIFAX'S RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION TO REINSTATE CASE

Plaintiffs' motion raises one simple issue:

> After reaching an agreement to settle a case, the Court issues a Local Rule 111 Order that gives the parties 30 days to consummate the settlement. On the 32nd day, plaintiff makes his first effort to address the settlement terms, but also seeks to add new and unreasonable terms. Can the plaintiff, on day 35, ignore his earlier agreement and re-open the case in order to force new terms?

The answer is no. Frison's own actions in failing to promptly meet the terms of the original agreement, his delay in seeking assistance from the Court, and his attempts to add new terms to the agreement are the sole cause of his current status. As such, this Court should not allow Frison to withdraw from his earlier affirmations or seek new terms through the leverage of further court action.

During the initial case management conference, the Court recognized that this case was more about a need for the understanding of confusing issues, than a recovery for violations of law. As a result, the Court stayed discovery and, instead, ordered the parties to a Settlement

Conference in hopes of addressing the plaintiffs' thirst for knowledge. Despite the Defendants' best attempts, it is apparent that plaintiffs' thirst may not ever be quenched.

On October 28, 2003, the parties' representatives convened before Magistrate Judge Day and participated in the settlement conference. After several hours, an agreement was reached. Part of that agreement, *at the insistence of the reporting agency defendants*, was for plaintiffs to review their credit files so that it was clear that all outstanding issues would be addressed and resolved with this settlement. The Defendants expressly informed plaintiffs that any disputes were to be made *promptly* in writing so that they could be researched. At that time, the only issue that Frison believed in existence was an MBNA charge-off, which he claimed would be resolved directly with MBNA. No agreement was reached regarding credit scores other than Defendants would provide plaintiffs with notice of what those scores were. Defendants had made it clear that they did not create the scores and thus, could not guarantee or set any particular score for the plaintiffs.

Based on the assumption that few issues, if any, remained on the files, the parties agreed to use diligent efforts to complete the review process by November 6. To accomplish this, the Defendants immediately – by phone from Judge Day's chambers during the conference itself – each caused a current credit file to be sent via fax to the plaintiffs. Two days later, this Court issued its Local Rule 111 Order, which gave the parties 30 days to reopen the case.

During the next 30 days, the Defendants made several attempts to elicit a response from the plaintiffs and even provided a draft, formal Settlement Agreement with which they could finalize the resolution of this case. Frison made no response to Equifax until December 1 – 34

days after receipt of the credit files.  At 8:28 AM – the Monday after Thanksgiving - Frison sent a 24-page fax to the Defendants that sought:

- Corrections or deletions to a total of 27 accounts, including the deletion of the MBNA charge-off.[1]
- Assignment of at least a 750 credit score to each plaintiff, which was reduced to 720 two days later.

Frison initially provided no time limit on a response except to request that corrected reports be sent to a third party as soon as possible.

Equifax's counsel, John J. Friedline, reviewed Frison's requests on December 1 and forwarded them to his client contact the same day.  Several of the requests involved making changes to accounts that conflicted with the information currently being provided by the creditor sources.  Because Frison had not submitted information to verify his position on some of these items, Equifax was required to contact those sources to see if there was just cause to make the requested corrections.  Equifax owes a duty to its customers, who will make financial decisions based in part on its data, to provide a complete and accurate picture of a consumer's credit history.  Equifax cannot and does not negotiate with accurate data as suppressing such information not only destroys the integrity of its database, but also exposes the consumer to potential liability under 18 U.S.C. § 1344.  The remaining requests sought by Frison were merely cosmetic changes to the file, and were accomplished immediately.

---

[1] According to Frison, he obtained credit insurance on his account and attempted to make a claim based on disability.  MBNA refused as the disability was a pre-existing condition, but did offer to return the premiums paid on the insurance.  There is no mention of MBNA agreeing to also wipe out the underlying credit debt.  MBNA currently reports the debt as an $11,499 charge-off.  Clearly, Frison's efforts to obtain new credit

195565                                 3

While this was taking place, Frison began a telephone campaign with Mr. Friedline in which he began placing deadlines on the resolution of his requests. Despite the fact that Frison delayed this matter for 34 days, he now wanted responses within hours. Initially, the deadline was 10 AM on Tuesday, December 2. On Tuesday, the deadline was moved to Tuesday at 4 PM. After Tuesday, it went first to 2 PM on Wednesday and then to 1 PM that same day.

Due to other commitments, Mr. Friedline was not available to personally take Frison's calls. Despite Frison's view that 34 days is a reasonable period for a response from him, he saw fit to place a far shorter response period – mere minutes – on Mr. Friedline. After not receiving an immediate response, Frison proceeded to contact several members of Mr. Friedline's firm, as well as employees of Equifax itself in order to relay his demands and deadlines. Upon notice of these unwarranted contacts, and at his first opportunity, Mr. Friedline wrote Frison that his requests had been received and were being handled appropriately.

Equifax and its counsel have acted properly in this matter and have put forth good faith efforts to finalize a matter that had been resolved back in October. In failing to identify any issues until 34 days after settlement, overstepping the bounds of the agreement by seeking additional, as well as questionable, recovery, and failing to timely seek the Court's assistance with this matter, plaintiffs have caused their own demise. Equifax believes that the settlement reached on October 28 is still valid and will continue its good faith efforts to investigate and

---

would be greatly enhanced if subsequent creditors were not made aware of this situation, which is the reason for Frison's enhanced efforts to force this account from his file.

correct those items that can be corrected.  This Court should, therefore, not reopen this matter and thereby provide plaintiffs leverage to renegotiate their earlier agreement.

WHEREFORE, Equifax respectfully requests that this Court DENY plaintiffs' untimely motion to reinstate this case and enter an order affirming the dismissal of this matter with prejudice.

Respectfully submitted this 5th of December, 2003.

EQUIFAX INFORMATION SERVICES LLC

By: *John J. Friedline*
JOHN J. FRIEDLINE (admitted pro hace vice)
Kilpatrick Stockton LLP
1100 Peachtree Street, Ste. 2800
Atlanta, GA  30309-4530
(404) 815-6500

NATHAN DANIEL ADLER
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, MD  21202-3201
(410) 332-8516

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of December, 2003, a copy of the foregoing Joint Response in Opposition to Plaintiffs' Motion to Reinstate Case was mailed first class, postage prepaid, to:

>Ellis & Lisa Ann Frison
>10015 Greenbelt Rd, #103
>Lanham, MD  20706
>
>Sandy David Baron
>Shulman, Rogers, Gandal, Prody
>    & Ecker, P.A.
>11921 Rockville Pike, 3rd Floor
>Rockville, Maryland 20852
>
>Bruce Luckman
>Satzberg, Trichon, Kogan
> & Wertheimer, P.C.
>1818 Market Street, 30th Floor
>Philadelphia, PA  19103

>*Nathan D. Adler*
>NATHAN D. ADLER